This was an action of assumpsit for goods sold and delivered, to which the defendant pleaded payment, and gave in evidence a receipt from Fitzgibbon, dated 8th May, 1837, for $350 00, and a receipt dated May 11th, 1837, for $150 00. The plaintiff produced Samuel D. Ascham, a clerk of Fitzgibbon, expecting to prove the receipt for $350 00 to be a forgery, but the witness swore that it was the handwriting of Fitzgibbon, and was unable or did not give any further explanation of it. A verdict passed in the case for the defendant, and a motion was made for a new trial, founded on an affidavit of Ascham, that but $200 were paid at the time the receipt was given for $350, which included another payment of $150, made a few days previous, and for which a receipt was given at the time, but which was represented to be lost. The witness had not disclosed this in his examination, because he did not know that he would be permitted to do so, and he was not interrogated on that subject; and as these circumstances did not occur to him until the receipt was pre-sented *Page 73 
during the trial; he had not mentioned them to the plaintiff's counsel until the case was closed. The witness further swore that he had wholly forgotten the receipt for $350, until the same was produced at the trial, when he was surprised to find it genuine.
By the Court:
We have concluded to order a new trial in this case, but not without much hesitation, arising out of the danger of admitting fraud and perjury, by allowing a witness to add to his testimony after the case is closed. Yet we would not permit this general consideration of impolicy to lead us so far from a consideration of the case itself, as to deny the plaintiff the benefit of important testimony not known to him; which he had no opportunity of discovering; and which was kept hack by the witness from a mistaken idea that he would not be permitted to give it in evidence. If a circumstance of this kind, which the plaintiff could not anticipate or provide against, should be held to deprive him of the benefit of important evidence, it would not only do a particular injustice, but bring into disrepute and discredit the trial by jury itself. As this is almost the universal mode of settling disputes among us, there is a clear policy to protect it from the imputation of injustice, and preserve for it the good opinion of those whose dearest rights may be subjected to its decision. On this ground, mainly, applications for new trials, where injustice is supposed to have been done by verdicts, have been listened to by the courts as a necessary corrective of the accidents and mistakes that often attend a first trial; and as essential in many cases to attain the great end of litigation — a correct decision of causes according to their merits. This mode of preventing injustice was very early resorted to by the courts; and, though subject in a great degree to the discretion of the judges, it is as far as practicable to be regulated by a legal discretion, on principles ascertained by adjudged cases. The party who brings himself clearly within the principle of such cases, obtains a new trial as a matter of right,
and not merely at the discretion of the court; except, perhaps, in cases where the grounds of his application may be strengthened or otherwise by the judge's opinion of the justice of the first verdict.
New trials are often granted for the admission of improper
evidence, or the exclusion of proper testimony; formisdirection of the judge to the jury; mistake ormisconduct of the jury; discovery of new evidence, and other causes. And though a new trial will not be granted because a party did. not give evidence which he might have pro-duced, *Page 74 
(1 Wils. 98,) nor to let him into a defence known to him at the first trial, (2 T. R. 113;) yet it has been granted where a material document out of the jurisdiction of the court was sent for in clue time but did not arrive until after the trial. (4 Chit.Gen. Pr. 57.) A new trial was also granted where the plaintiff was nonsuited through the mistake of his witness in a material circumstance; (2 Anst. 517; 1 Bing. 145,) and where the defendant by the mistake of his witness failed to produce an important document. (2 Marsh. 265.) So the discovery of new evidence by the attorney of an executor defendant, then out of the country, though in the actual custody of the attorney himself, yet not known by him to be so, was considered a sufficient ground for granting a new trial. (Broadhead vs. Marshall'sEx'r., 2 Wm. Blac. 955.) In referring to these decisions we do not mean to affirm them all as general rules for our government in granting new trials; and we feel the delicacy and danger of laying down any general rule that may be supposed to allow witnesses to add to or correct their testimony once given on oath. The danger of perjury is apparent. At all events, the mistake must be a clear and positive one; positively sworn to by the witness; confirmed in the judgment of the court by accompanying circumstances, and wholly uncontradicted by other evidence in the cause. In such a case the danger of collusion and fraud, or of perjury, is not perhaps so great as to prevent the court from attempting by granting a new trial to reach the real truth and justice of the particular case; especially as the witness, who now comes forward to state what he was bound by his oath to have stated on the former trial, will be subjected to the close scrutiny of another jury.
The plaintiff in the present case is an administrator, and the existence of this receipt was not known to him, much less the circumstances under which it was given. The witness himself swears that he had forgotten it altogether; and he was in fact brought here from another State to prove it a forgery. Whilst under examination in the trial he discovers that the receipt is genuine; and then, for the first time, recollects that it was given for more money than was received; which important fact he neither mentions to the court, nor to the plaintiff's counsel. The testimony is, therefore, as it regards the plaintiff, strictly after discovered evidence; evidence of which he was not apprised, and could not by any diligence have procured; and, with regard to the witness, it is not so much a mistake in giving his evidence, as an omission to state an important fact from *Page 75 
a mistaken impression, that he would not he allowed to state it; or that he ought not to state it unless particularly interrogated.
"We shall, therefore, grant a new trial; hut all the cases establish that it ought to he on terms; and, where the ground of application is the mistake or default of the party's own witness, the usual and proper terms are the payment of costs.
 Let the plaintiff pay the costs of the term.